IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MIDWEST INTEGRATED COMPANIES LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 12-3085 |
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 965, | ) ) ) ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Midwest Integrated Companies LLC filed a Complaint for breach of contact pursuant to the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. Pending is the Motion of Defendant International Union of Operating Engineers Local 965 to Dismiss or, in the alternative, Motion to Stay Litigation until the matter is arbitrated.

# I. FACTUAL BACKGROUND[1]

In its Complaint, the Plaintiff alleges it is in the business of processing and recycling landscape and bulk tree waste of varying sizes from tree stumps to large wood debris. The Defendant is a charter member of the International Union of Operating Engineers and represents fifteen counties in Central Illinois.

The Plaintiff alleges that on or about September 16, 2009, it was hired by R.A. Cullinan as a subcontractor to remove landscape waste, including tree stumps for a road work project for the State of Illinois ("the Road Project"). Soon after the Plaintiff was hired to do the Road Project, it was contacted by a representative from the Defendant Union who informed the Plaintiff that it had an exclusive agreement with the State of Illinois which required the Plaintiff to hire the Defendant's members for work relating to the operation of certain machinery on the Road Project. The Defendant demanded that Plaintiff sign a collective bargaining agreement and hire its members for the Road Project.

---

[1]The facts contained herein are from the Plaintiff's Complaint and the attachments thereto.

The Plaintiff complied with the Defendant's demand and entered into a Collective Bargaining Agreement ("the CBA") with the Defendant. The CBA is attached to the Plaintiff's Complaint.[2] Article 3A(b) of the CBA provides in relevant part as follows:

> [The Defendant] shall be the sole and exclusive source of referral of applicants for employment. The [Plaintiff] shall request [the Defendant] to refer applicants as required and shall not solicit applications directly and shall not in any manner circumvent [the Defendant] in the recruitment of applicants for employment.

In order to remove certain landscape waste for the Road Project, the Plaintiff required the use of a large and expensive piece of machinery called the Sneller 180 Stumpgrinder ("the Stumpgrinder"). The Plaintiff alleges the Stumpgrinder requires special training and experience to operate. Because of the skill and experience necessary to operate the machinery, only a few of the Plaintiff's employees are actually qualified and properly trained to operate the Stumpgrinder.

The Complaint alleges the Defendant, pursuant to the CBA,

---

[2]In determining whether dismissal is warranted, the Court considers the Complaint itself and documents attached thereto. See Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012).

demanded that Plaintiff hire one of the Defendant Union members to operate the Stumpgrinder. The Defendant would not permit the Plaintiff's union member employees to operate the machinery. Although the Plaintiff informed the Defendant it was reluctant to allow the Defendant's members to operate the Stumpgrinder unless they had experience, the Defendant's representative assured the Plaintiff that its members were experienced and qualified to operate the Stumpgrinder. The Defendant's representative further stated that, if its members were not allowed to operate the Stumpgrinder, then Plaintiff would be in breach of the CBA and the Road Project would be shut down.

The Plaintiff claims it relied on the Defendant's representations and agreed to allow one of its members to operate the Stumpgrinder. A member of the Defendant Union started to operate the Stumpgrinder. He got in the cab, started the engine and within two minutes, the Stumpgrinder flipped over. This resulted in over $30,000.00 in damages to the machine.

The Plaintiff alleges that Defendant breached the CBA in failing to refer qualified and experienced workers to operate the Stumpgrinder.

4

The Complaint in this action was filed on March 15, 2012. On May 8, 2012, the Defendant filed its first motion to dismiss. That motion challenged the factual assertions of the Complaint and the interpretation of the CBA. On September 24, 2012, the Court denied the Defendant's first motion to dismiss.

On October 12, 2012, the Defendant filed its Answer, Affirmative Defenses and Counterclaim against the Plaintiff. The Defendant admitted that jurisdiction and venue was proper. In its Counterclaim, the Defendant also sought damages in this Court for breach of contract.

On December 12, 2012, this Court entered an agreed Scheduling Order. The Plaintiff claims it has complied with all discovery deadlines, while the Defendant has not been in total compliance with the Scheduling Order. During the course of this litigation, the Plaintiff has filed two separate motions to compel the Defendant to comply with discovery requests.

On October 28, 2013, the Court Allowed the Defendant's Stipulation for Substitution of Counsel. The Defendant's attorney since the beginning

of this litigation was terminated as counsel of record and its current attorney was added as counsel.

On November 8, 2013, the Defendant filed the instant motion seeking, inter alia, arbitration. The Plaintiff contends the Defendant's request should be denied for the following reasons: (1) the Defendant waived its right to seek arbitration by participating in the instant litigation and filing its own claim seeking monetary relief; and (2) the purported arbitration clause does not apply to the claims being made by the Plaintiff in its Complaint.

## II. DISCUSSION

In support of its argument that the case should be dismissed or submitted to arbitration, the Defendant notes that the Labor-Management Relations Act provides, "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).

The Defendant contends the Plaintiff's claim for breach of contract

is subject to a "final and binding" arbitration. Article 3-A ("Referral of Applicants"), Section 6(k) of the Parties' CBA–the subparagraph immediately preceding the contractual clause upon which the Plaintiff purports to premise its breach of contract claim–provides as follows:

> An applicant for employment who is aggrieved by an action of the Union with respect to the registration or referral under this provision or who is aggrieved by an action of the Employer in connection with hire hereunder, may, within ten (10) days of the occurrence of the event which constitutes the basis for the grievance, file a written statement of the grievance with the Union and the Employer. Upon such filing, the grievance shall be considered and disposition thereof made within ten (10) days by a Board consisting of a representative of the Union, a representative of the Employer, and an impartial chairman appointed jointly by the Employer and the Union. Such Board shall consider the grievance and render a decision which shall be final and binding. An Employer signatory to this Agreement may file a grievance against the Union with respect to referral of employees. Such grievance shall be processed in the same way as stated in this Article.
>
> The Board is authorized to issue procedural rules for the conduct of its business, but is not authorized to add to, subtract from, or modify any of the provisions relating to the referral arrangement. The cost of the third member shall be borne equally by all parties involved.

The Defendant further asserts that even if the Court were to find the "referral" clause inapplicable to the Plaintiff's claim, the Parties' CBA

contains a general catch-all grievance/arbitration clause as well, which the Defendant alleges makes the breach of contract arbitrable. Article 7 of the CBA is entitled "Grievance and Arbitration." Section 1 states, "There shall be no strike or lockout on account of any difference of opinion or dispute which may arise between the Employer and the Union relative to the interpretation of this Agreement." Section 3 provides that an "unresolved grievance" is subject to a "final and binding arbitration."

In determining whether a party has waived its right to invoke arbitration, courts consider a number of factors. See Cooper v. Asset Acceptance, LLC, 532 F. App'x 639, 641 (7th Cir. 2013). These factors include "whether the party attempting to invoke its right to arbitrate acted diligently in doing so, whether the invoking party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." Id. Another factor to consider is the amount of prejudice that would be suffered by the party not seeking arbitration. See id. "[A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."

Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995). Therefore, "when a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate." Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc., 660 F.3d 988, 995 (7th Cir. 2011).

Based on a consideration of these factors, the Court finds that Defendant has waived its right to invoke arbitration. The Defendant has not acted diligently in requesting arbitration. The motion to dismiss now before the Court was filed more than thirteen months after the previous motion to dismiss was denied on September 24, 2012. The party seeking arbitration should do "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." Cabinetree, 50 F.3d at 391. Accordingly, the Court concludes that Defendant should have requested arbitration when it filed its first motion to dismiss or, at the latest, soon after that motion was denied.

Additionally, the Court finds that Defendant has participated in this

litigation. Following the denial of the previous motion, the Defendant filed an Answer to the Complaint and Affirmative Defenses [Doc. No. 9] on October 12, 2012. Significantly, this pleading also included a Counterclaim, wherein the Defendant asserted its own breach of contract claim. This Court concludes this constitutes participation in the case. Moreover, the docket report reflects that a scheduling conference was held on December 12, 2012. The same day, a Scheduling Order [Doc. No. 13] was entered which established discovery and other deadlines throughout the course of the litigation. The Parties participated in discovery. The docket reflects that the Plaintiff filed two motions to compel [Doc. Nos. 14 & 15], both of which were Allowed. On June 28, 2013, the Defendant was ordered to answer by a date certain all discovery requests listed in the Plaintiff's Motion. On October 4, 2013, the Court ordered the Defendant to produce requested witnesses for the Plaintiff's noticed depositions.

Based on the foregoing, the Defendant's assertion that it "has not engaged in any discovery, let alone extensive discovery" [Doc. No. 18, at 8], is somewhat disingenuous. Regardless of whether it actively participated

in or served any discovery requests, the Defendant was twice compelled by the Court to respond to the Plaintiff's requests. The Court declines to allow the Defendant to benefit from its failure to follow the Scheduling Order and the Federal Rules of Civil Procedure.

Just as significantly, the discovery deadlines came and went without the Defendant requesting arbitration or otherwise moving the litigation forward. The instant motion was filed after all of the discovery deadlines passed. If the Defendant's intent was to not actively participate in discovery because it believed the dispute should be arbitrated, then it should have filed its motion before some of the discovery deadlines passed. The fact that it did not establishes that Defendant did not act diligently and that it substantially delayed its request for arbitration. Moreover, the Court finds that Plaintiff would at least be somewhat prejudiced after expending significant time and resources in attempting to engage in discovery.

The Court further notes that Defendant's previous motion challenged–at least primarily–the substance of the Plaintiff's claim. In that

motion, the Defendant argued that Plaintiff failed to properly allege that the union member who operated the Stumpgrinder was unqualified.  The Defendant requested dismissal on that basis or a more definite statement as to the operator's experience or qualifications.  In that motion, the Defendant further asserted that the language of the CBA clause is ambiguous.  By filing a motion which attacked the substantive allegations of the Complaint and subsequently filing a counterclaim for breach of contract, the Court concludes that Defendant has acquiesced in the Plaintiff's selection of this forum and thus waived its right to arbitrate.

"Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election–against arbitration."  Cabinetree, 50 F.3d at 391.  Because the Defendant did not move promptly for arbitration, the Court finds that the Defendant waived its right to arbitrate.[3]

---

[3]Having concluded that Defendant's motion must be denied because it waived its right to arbitrate, the Court need not consider the Plaintiff's alternative argument that the purported arbitration clause does not apply to the Plaintiff's claims.

Ergo, the Motion of Defendant International Union of Operating Engineers' Local #965 to Dismiss pursuant to Rule 12(b)(6) the Plaintiff's Complaint or, in the alternative, to stay the proceeding so that Plaintiff's Claim may be submitted to Arbitration, [d/e 17] is DENIED.

Due to a scheduling conflict, the final pretrial conference now set for September 8, 2014 at 2:00 p.m. is hereby continued to October 2, 2014 at 2:00 p.m.

ENTER: August 7, 2014

FOR THE COURT:

                                          s/Richard Mills
                                          Richard Mills
                                          United States District Judge